# In the United States Court of Federal Claims

No. 10-192T

(Filed: January 7, 2014)

```
*************************************   *
                                        *
SALEM FINANCIAL, INC.,                  *    Tax Refund Suit; STARS Structured
                                        *    Transaction Between BB&T Bank and
                 Plaintiff,             *    Barclays Bank; Rule 59(e) Motion to
                                        *    Alter or Amend the Court's Judgment.
v.                                      *
                                        *
UNITED STATES,                          *
                                        *
                 Defendant.             *
                                        *
*************************************   *
```

*Rajiv Madan*, with whom were *John B. Magee*, *Christopher P. Bowers*, *Christopher P. Murphy*, *Royce Tidwell*, *Nathan P. Wacker*, and *Nicholas L. Wilkins*, Bingham McCutchen LLP, Washington, D.C., and *James C. McGrath* and *Deana K. El-Mallawany*, Bingham McCutchen LLP, Boston, Massachusetts, for Plaintiff.

*Dennis M. Donohue*, with whom were *John L. Schoenecker*, *Raagnee Beri*, *Kari M. Larson*, and *William E. Farrior*, Trial Attorneys, and *Alan S. Kline*, Special Attorney, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.

OPINION AND ORDER ON PLAINTIFF'S
MOTION TO ALTER OR AMEND JUDGMENT

WHEELER, Judge.

On September 20, 2013, the Court issued its post-trial Opinion and Order denying Plaintiff's claim for a tax refund, holding that BB&T Bank[1] was not entitled to foreign tax credits, interest expense deductions, or transaction cost deductions claimed in connection with its participation in a financial transaction known as STARS ("Structured Trust Advantaged Repackaged Securities"). On November 5, 2013, BB&T filed a motion under RCFC 59(e) to alter or amend the Court's judgment with respect to the

---

[1] The named Plaintiff, Salem Financial, Inc., is a subsidiary of BB&T Corporation and a bank chartered under the laws of North Carolina.

Court's decision that BB&T is not entitled to claim $74,551,947.40 in deductions for interest expenses on the STARS loan.  This motion has been fully briefed and is ready for decision.  A detailed factual history of this case can be found in the Court's previous opinion.  See Salem Fin., Inc. v. United States, 112 Fed. Cl. 543 (2013).  The Court will provide a brief overview of the factual findings relevant to BB&T's motion to alter or amend the judgment.

## Background

The BB&T STARS transaction was in effect for nearly five years, from August 1, 2002 through April 5, 2007.  Barclays Bank and KPMG developed STARS to generate tax benefits to be shared among the transaction's participants.  The transaction consisted generally of a trust ("Trust") and a loan ("Loan").

In the BB&T STARS transaction, BB&T established the Trust which contained approximately $6 billion in revenue-producing assets. Id. at 549. The administrator of the Trust was based in the United Kingdom, so the monthly revenue from the Trust assets was taxable in the U.K. rather than in the U.S.  Barclays received the proceeds from the Trust and contributed the amount back to the Trust in a circular flow of funds.  The subsequent transfer of revenues out of the U.K. generated U.K. tax credits, which were split between BB&T and Barclays.  In an effort to give the transaction the appearance of having a legitimate business purpose, the STARS transaction included a $1.5 billion Loan from Barclays to a BB&T subsidiary.  On a monthly basis, Barclays made a payment to BB&T representing BB&T's share of the tax credits.  This was known as the "Bx payment" and had the effect of reducing the interest cost of BB&T's loan. Id.

In the opinion denying BB&T's claim for a tax refund, the Court analyzed the STARS transaction according to the economic substance doctrine, which prevents the recognition of tax benefits from abusive tax shelters. Id. at 583.  Under the economic substance doctrine, a taxpayer bears the burden of demonstrating that a given transaction carries both (1) the objective possibility of realizing a pre-tax profit (objective economic substance), and (2) a non-tax business purpose (subjective economic substance). Wells Fargo & Co. v. United States, 91 Fed. Cl. 35 (2010), *aff'd*, 641 F.3d 1319 (Fed. Cir. 2011).

The pre-tax profit prong of the economic substance test requires an objective analysis of whether a prudent investor had a reasonable possibility of making a profit from the transaction apart from tax considerations.  Stobie Creek Investments LLC v. United States, 608 F.3d 1366, 1376-77 (Fed. Cir. 2010).  Applying this standard, the Court found that no prudent investor would view the Loan transaction as having a reasonable possibility of making a pre-tax profit. Salem, 112 Fed. Cl. at 587.  The Bx payment cannot be considered pre-tax profit on the Loan because it was generated by the

circular cash flows designed for tax purposes and thus is purely a tax effect of the transaction.  Excluding the Bx payment, the cost of borrowing on the STARS Loan was LIBOR + 25 basis points.  This rate was significantly higher than rates on comparable sources of funds available to BB&T.  The Court found that no reasonable commercial banks would engage in such a transaction when it had less expensive and less complex funding sources available.  Id.

The non-tax business purpose prong of the economic substance test focuses on whether the taxpayer's sole subjective motivation is tax avoidance.  The Court found that the Loan lacked any non-tax business purpose and served only to camouflage the true nature of the tax avoidance scheme.  Id.  Furthermore, the Court found that the Loan and Trust were artificially linked to enable BB&T to deduct U.S. tax benefits generated by the Trust structure from the cost of the Loan, thereby making the Loan appear to be low-cost funding.  Whether viewed separately or together as one integrated STARS transaction, the Court found that the entire transaction must be disregarded for lack of economic substance.  Id. at 585-89.

## Analysis

A. Standard of Review

Under RCFC 59, the Court may reconsider and alter or amend its judgment if the movant can show (1) that there has been an intervening change in controlling law, (2) that previously unavailable evidence is now available, or (3) that the motion is necessary to prevent manifest injustice.  See Dairyland Power Co-op v. United States, 106 Fed. Cl. 102 (2012); Henderson Cnty. Drainage Distr. v. United States, 55 Fed. Cl. 334, 337 (2003).

Granting reconsideration or amendment under Rule 59 "requires 'a showing of extraordinary circumstances.'"  Shapiro v. Sec'y. of Health and Human Servs., 105 Fed. Cl. 353, 361 (2012) (collecting cases).  A motion for reconsideration is not intended to give an "unhappy litigant an additional chance to sway" the court.  Matthews v. United States, 73 Fed. Cl. 524, 526 (2006).  Nor may a party prevail on a motion for reconsideration by raising an issue for the first time on reconsideration when the issue was available to be litigated at the time the complaint was filed.  Id.

B. BB&T Fails to Meet the Standard Required for Reconsideration.

BB&T's motion for reconsideration fails to meet the standard required for an RCFC 59(e) motion to alter or amend the Court's judgment.  Rather than pointing to a manifest error in law or fact, BB&T argues that the Court should reconsider its decision in light of a recent decision by the United States Tax Court involving a different STARS

transaction. In Bank of New York Mellon Corp. v. Commissioner, the Tax Court granted a motion for reconsideration and issued a supplemental opinion allowing the Bank of New York to deduct interest on its STARS loan. T.C. Memo. 2013-225 (Sep. 23, 2013) ("Bank of New York"). The Tax Court reasoned that, as a corollary of its determination that the STARS loan was independent from the STARS trust, it was required to evaluate the loan separately. Upon such evaluation, the Tax Court determined that Bank of New York was entitled to interest deductions because the loan was a bona fide loan available for use in its banking business notwithstanding the fact that the loan may have been relatively expensive. Id. at *2. The Tax Court concluded that interest on a loan used for economically substantive activity is deductible even if the remainder of the transaction was found to lack economic substance.

The Tax Court's decision is not controlling authority in this Court. See Otis Elevator Co. v. United States, 618 F.2d 712, 719 (Ct. Cl. 1980) (finding that Tax Court decisions are not controlling law in the Court of Federal Claims). At best, this decision provides persuasive authority. However, what little persuasive value the decision might have is undermined by the fact that the Court has already considered and rejected the arguments advanced in BB&T's motion. A motion for reconsideration is not an opportunity for the losing party to retread old arguments from earlier briefs as BB&T attempts to do here. In its RCFC 59(e) motion, BB&T argues that it paid interest on a bona fide loan, the proceeds of which were available for it to use in its banking business. Similarly, in its post-trial briefing, BB&T argued that the Court should find that the Loan had a non-tax purpose and non-tax effects such that the Court should allow BB&T to deduct interest payments made on the Loan. See BB&T Post-Trial Br., Dkt. No. 210 at 242-46. The Court rejected the argument in BB&T's post-trial brief and found that the STARS Loan lacked economic substance because it was devised solely to provide BB&T with a pretext for engaging in a sham transaction. Salem, 112 Fed. Cl. at 587. The Tax Court's decision in Bank of New York provides no basis for the Court to revisit arguments that have been litigated, considered by the Court, and rejected.

BB&T raises one new matter that differs from its post-trial brief when it argues that the Loan was commercially viable on its own because it did not assist as a technical matter in the claim for foreign tax credits. As described below, the Court rejects the argument that the Loan was commercially viable on its own. However, even if this was not the case, the Court would not consider this argument. A motion for reconsideration may not be used to raise an issue that was available to be litigated at the time the complaint was filed, and this argument was available to BB&T when it filed its post-trial brief. Thus, BB&T has failed to meet the standard for reconsideration and its motion is denied.

    C. <u>The Tax Court's Supplemental Opinion is Not Persuasive due to Differences in its Factual Findings.</u>

Even if BB&T had met the standard required for reconsideration, the Tax Court's supplemental opinion carries little weight because the Tax Court's findings of fact differ from the Court's findings. In its motion for reconsideration, BB&T suggests that the Tax Court's findings in <u>Bank of New York</u> and this case are identical. However, the findings of fact in the two cases differ in key respects that lead the Tax Court and this Court to reach different conclusions regarding whether interest expenses on the STARS loan are deductible.

In its supplemental decision, the Tax Court relied upon two findings of fact from its original opinion: (i) the STARS loan was independent from the trust and (ii) the Bank of New York was free to use the loan proceeds in its banking business. <u>Bank of New York</u>, T.C. Memo. 2013-225, at *4. These findings are incongruent with the Court's findings in the present case.

First, the Tax Court concluded that the STARS loan was independent from the trust because the loan was "separate and distinct" from the remainder of the STARS transaction and was not used to "finance, secure or carry out the STARS structure." <u>Id.</u> Here, the Court found (and BB&T previously argued) that the Loan was necessary to the remainder of the STARS transaction. Technically, the Loan and Trust were two discrete components, but the Court found that the Loan component was essential to "carry out" the STARS structure and was necessary to successfully market the STARS transaction to U.S. companies such as BB&T. Indeed, the Court found that BB&T only entered into the Loan because of the need to hide that the Trust structure was a sham. <u>Salem</u>, 112 Fed. Cl. at 587. Unlike the Tax Court's findings in <u>Bank of New York</u>, the Court found that the Loan was necessary to the remainder of the STARS transaction and therefore the Loan was not separate and distinct from the remainder of the transaction.[2]

Second, the Tax Court found that proceeds from the STARS loan were available for use in the Bank of New York's banking business. This finding led the Tax Court to conclude that the loan had economic substance because there was a non-tax business purpose to the loan. Here, the Court excluded BB&T's alleged profits from the loan proceeds because such profits are irrelevant for purposes of the economic substance analysis. <u>Id.</u> at 588. Furthermore, BB&T was required to establish that it objectively

---

[2] As the Court has pointed out, the terms of the BB&T Loan lacked economic reality in the business world. Without the tax benefits of the sham Trust, no astute business person would have ever considered a Loan where the *lender* makes significant payments to the *borrower* for 35 months after the Loan took effect. These terms were made possible solely because of the sham Trust. See <u>Salem</u>, 112 Fed. Cl. at 580.

anticipated a profit from the transaction apart from the tax benefits, but BB&T produced no evidence that it anticipated profit from the loan proceeds when deciding whether to engage in STARS.  Id.  Thus, the Court found that BB&T did not enter into the Loan because of a reasonable possibility of making a profit.  Rather, BB&T entered into the Loan to disguise Barclay's rebate of a portion of BB&T's U.K. tax payments through payment of the Bx.  Under the Court's factual findings, the Loan fails the economic substance test and BB&T is not entitled to deduct interest payments.

Conclusion

For the reasons set forth above, Plaintiff's motion to alter or amend the judgment is DENIED.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge